**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MINA SEDAROUS,
    Plaintiff,

vs.

HENRY FORD HEALTH SYSTEM, d/b/a
HENRY FORD HOSPITAL,
    Defendant.

Case No. 2:19-cv-12525
Hon.

_____/

Alyson Oliver (P55020)
Cameron Bell (P81934)
OLIVER LAW GROUP P.C.
Attorneys for Plaintiff
1647 W. Big Beaver Road
Troy, MI 48084
T: (248) 327-6556
E: notifications@oliverlawgroup.com
_____/

**COMPLAINT AND JURY DEMAND**

NOW COMES PLAINTIFF, MINA SEDAROUS, by and through his counsel and in support of his Complaint states as follows:

1. At all times relevant hereto, Plaintiff Mina Sedarous was a resident of Oakland County, Michigan.

2. Defendant Henry Ford Health System d/b/a Henry Ford Hospital ("Hospital") was at all time pertinent hereto a duly licensed and accredited medical care institution doing business in Wayne County, Michigan.

3. The events giving rise to this cause of action took place in Wayne and Oakland Counties, Michigan.

4. The amount in controversy exceeds $75,000.00.

5. This is a civil action seeking judgment, relief and damages brought pursuant to the Americans with Disabilities Act ("ADA"), 42 USC 12101 *et seq*., as amended, for discrimination based upon a disability and the failure to accommodate same. This Court has jurisdiction of this action pursuant to 28 USC 1331 and 1343(4).

6. Venue is proper in this Court.

7. Plaintiff was employed by Defendant from September 15, 2008 until March 5, 2019; first as a credentialed pharmacist and later as promoted to Pharmacy Supervisor.

8. Plaintiff suffered a closed fracture of the right radius on January 24, 2019; unrelated to his duties as an employee of Defendant.

9. This injury caused Plaintiff to be unable to perform manual tasks and work; to wit, he could not drive, and this restriction impaired his ability to work.

10. As such, Plaintiff qualified as a protected individual under the ADA.

11. Plaintiff disclosed his disability to Defendant on or about January 28, 2019 with a request for reasonable accommodation in the form of a request to work from home.

12. Plaintiff did not receive the reasonable accommodation requested on January 28, 2019 and on February 13, 2019 made a second request to work from home involving disability-related driving restrictions.

13. Plaintiff did not receive the reasonable accommodation requested on February 13, 2019 and on March 4th, 2019 made a third request for reasonable accommodation in the form of a medical leave of absence.

14. These requests were supported by medical documents from Plaintiff's treating physician, supporting the limitation on Plaintiffs' ability to drive while in recovery.

15. On March 4, 2019 after making the third request for reasonable accommodation was verbally discharged, and the discharge was effective March 5, 2019.

16. As a result of the medical history outlined above, Plaintiff is a person to whom the American with Disabilities Act applies.

17. Defendant and/or Defendant's employees and agents were aware of Plaintiff's medical history, diagnosis and needs at the time of the events set forth in this Complaint.

18. Plaintiff has been qualified and able to perform the essential functions of the employment positions he has held with Defendant and continues to be able to perform same to date.

19. Plaintiff was and is currently treated less favorably than non-disabled co-workers at Defendant's place of business.

20. Defendant meets all the requirements for employer status under the ADA.

21. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission for the discrimination that took place during the course of his employment and that led to the termination thereof.

22. A right to sue letter was subsequently issued, terminating its processing of the charge.

23. This claim has been timely filed.

### COUNT I – VIOLATION OF TITLE I OF THE ADA

24. Plaintiff repeats, realleges and incorporates herein by reference the allegations contained in the foregoing paragraphs.

25. Plaintiff brought his need for reasonable accommodations to the attention of his supervisor, who did nothing to effectuate accommodations.

26. Plaintiff submitted a physicians note requesting reasonable accommodation request to the Defendant on Plaintiff's behalf.  That request was denied by Defendant.

27. The accommodations requested by Plaintiff and his physician was the ability to work a short time period from home.

28. For years, Plaintiff routinely worked significant hours from home in addition to time worked at Defendant's physical facilities.

29. This practice was sanctioned for many years; and had only recently been restricted to him by a newly assigned supervisor; who had objected to the long standing practice.

30. In any event, Plaintiff could have and for many years did effectively work from home for short periods of times, reflecting that this physician request for temporary accommodations could have and should have been provided easily by Defendants in this circumstance.

31. Almost immediately after the requests were made, Defendant began a decided agenda of retaliation against Plaintiff for his disability and his requests for reasonable accommodations of same.

32. Specifically, when Defendant chose to use personal time, so he could comply with his doctors' requests that he not drive to the Defendant's location, while simultaneously working from home despite his use of personal days, Defendant terminated Plaintiff claiming that he had violated terms of his employment.

33. At all relevant times, Plaintiff was qualified individual with a disability within the meaning of the ADA.

34. As a result of Defendant's refusal to accommodate Plaintiff's condition, Plaintiff was wrongfully terminated from his lengthy employment with Defendant.

35. As set forth above, Defendant and/or one or more of Defendant's employees and agents discriminated against Plaintiff in violation of the ADA, intentionally, and with malic and reckless indifference to Plaintiff's rights.

36. As a direct and proximate result of the Defendant's discrimination with malice and reckless indifference to Plaintiff's rights, Plaintiff has lost wages, past, present and future, has lost employment opportunities, has suffered physically and emotionally, has had his reputation jeopardized, and has endured humiliation.  Defendant's aforesaid violations of the ADA have caused and continue to cause Plaintiff to suffer substantial damage for pecuniary losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## COUNT II – VIOLATION OF MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

37. Plaintiff repeats, realleges and incorporates herein by reference the allegations contained in the foregoing paragraphs.

38. At all relevant times, Plaintiff performed his job duties in a manner that was satisfactory or better.

39. At all relevant times, Plaintiff was an employee, and Defendant was her employer, covered by and within the meaning of the Personas with Disabilities Civil Rights Act ("PDCRA"), MCL 37.1201 *et seq*.

40. Plaintiff's wrist injury and related conditions constitute a disability within the meaning of the PDCRA.

41. At all times relative hereto, Plaintiff's disability status was unrelated to her ability to perform the duties of a pharmacist with Defendants and is unrelated to her

qualifications for employment in such capacity with reasonable accommodations in place.

42. Plaintiff was discriminated against, within the emanating of the PDCRA, when Defendant refused reasonable accommodations and then terminated Plaintiff's employment as described herein.

43. Plaintiff's disability status was a determining factor in Defendant's decision to discipline Plaintiff.

44. The actions of Defendant and tis agents, representatives and employees were intentional and in disregard for the rights and sensibilities of Plaintiff

45. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has sustained injuries and damages, including the loss of earnings and earning capacity; mental and emotional distress; humiliation and embarrassment; loss of career opportunities; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue a gainful occupation of choice.

**COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

46. Plaintiff repeats, realleges and incorporates herein by reference the allegations contained in the foregoing paragraphs.

47. Defendant's conduct as outlined above was intentional.

48. Defendant's conduct as outlined above was extreme, outrageous, and of such character as not to be tolerated by civilized society.

49. Defendant's conduct as outlined above was for an ulterior motive or purposes.

50. Defendant's conduct resulted in severe and serious emotional distress.

51. As a direct and proximate result of Defendant's conduct, Plaintiff has been damaged in the manner outlined herein.

## REQUEST FOR RELIEF

52. Plaintiff repeats, realleges and incorporates herein by reference the allegations contained in the foregoing paragraphs.

53. Plaintiff, having sustained damages in excess of $75,000 as a result of Defendant's actions, hereby requests that this Court award Plaintiff in an amount deemed appropriate by this Court: compensatory damages, punitive damages, exemplary damages, back and front pay, all costs and attorney fees, and all other relief determined appropriate by this Court.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

Respectfully Submitted,

OLIVER LAW GROUP P.C.

Date: August 28, 2019

/s/ Alyson Oliver
Alyson Oliver (P55020)
Cameron Bell (P81934)
Attorneys for Plaintiff
1647 W. Big Beaver Rd.
Troy, MI 48084
T: (248) 327-6556
E: notifications@oliverlawgroup.com